UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Council for Disability Rights, <br> an Illinois not for profit corporation, <br> Bruce Moore, Larry Quillinan, <br> Venzelma Cotton, Kent Smith, Doris <br> Stewart, Margaret Holzer, on their own <br> behalf and on behalf of a class of similarly <br> situated persons, | ] <br> ] <br> ] <br> ] <br> ] <br> ] <br> ] | No: 05 C 5689 |
| | ] | |
|    Plaintiff, | ] <br> ] | Judge: Wayne R. Andersen |
|  v. | ] <br> ] | Magistrate Judge: Nan R. Nolan |
| City of Chicago, a municipal <br> corporation, | ] <br> ] | Jury Demanded |
| | ] | |
|     Defendant | ] | |

## AMENDED COMPLAINT

### INTRODUCTION

1.      Plaintiffs Council for Disability Rights, Larry Quillinan, Venzelma Cotton, Bruce Moore, Kent Smith, Doris Stewart, Margaret Holzer, bring this action on their own behalf and on behalf of other similarly situated persons with mobility impairments who live, work and for travel in the City of Chicago, Illinois to put an end to the City of Chicago's systemic failure to properly install and maintain curb cuts and ramps necessary for the mobility of persons with disabilities.

2.      Each of the individual named plaintiffs has a disability: all of them use a wheelchair or other assistive device, and one of the plaintiffs is legally blind.

3.     The plaintiffs bring this action under Title II of the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., and the regulations promulgated thereunder (the "ADA") and under Section 504 of the Rehabilitation Act of 1973, which prohibits discrimination on the basis of disability "under any program or activity receiving Federal financial assistance." 29 U.S.C. 794(a) ("Section 504"),  to challenge the City of Chicago's pattern and practice of: (1) failing to properly install or maintain curb cuts and ramps when resurfacing streets and altering or installing city sidewalks; (2) failing to install all necessary curb cuts and ramps at a particular intersection when resurfacing streets and altering or installing city sidewalks; (3) failing to develop and implement a proper Transition Plan as required by the ADA; and (4) failing in the City's Transition Plan to develop and implement a prioritized schedule for installing proper curb ramps at existing crossings or as a part of walkways where ramps have not been installed or altered since the effective date of the ADA. Plaintiffs are seeking declaratory and injunctive relief and damages.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction regarding Plaintiffs claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 (3)(4).

5.     Plaintiffs' claims are authorized pursuant to 28 U.S.C. § 2201, § 2202, and 42 U.S.C. §§ 12101 et. seq.

6.     Venue is proper in the Northern District of Illinois as all claims arise in

District, the plaintiffs reside in the District, and the Defendant conducts business in the District.

## PARTIES

### Plaintiffs

7.      Plaintiff the Council for Disability Rights (hereinafter "CDR") is a Not for Profit Corporation in Chicago, providing direct services and advocacy for persons with disabilities. CDR's advocacy for persons with disabilities has extended to participation in legal proceedings.

8.      Plaintiff Larry Quillinan resides in Chicago Illinois. He is retired from the City of Chicago's Department of Aging and travels within Chicago each day in order to conduct business as an advocate for persons with disabilities, and for other routine daily activities. Mr. Quillinan has a mobility impairment and is legally blind. Mr. Quillinan is a person with a disability as that term is defined by the ADA.

9.      Plaintiff Venzelma Cotton resides in Chicago Illinois, and often travels in the City of Chicago to conduct business as an advocate for persons with disabilities, to shop, and for other purposes. Ms. Cotton has a mobility impairment and uses two crutches to ambulate. Ms. Cotton is a person with a disability as that term is defined by the ADA.

10.     Plaintiff Bruce Moore resides in Chicago Illinois.  He has retired from the State of Illinois' Department of Rehabilitation Services and travels in the City of Chicago to conduct business as an advocate for persons with disabilities, to shop, and for other

purposes. Mr. Moore has a mobility impairment and uses a manual wheelchair to ambulate.  Mr. Moore is a person with a disability as that term is defined by the ADA.

11.     Plaintiff Kent Smith resides in Elmhurst, Illinois, and has frequently traveled to the City of Chicago to conduct business as the former (now retired) Development Officer of the Ada S McKinley agency, a Not For Profit Corporation that advocates an independent living philosophy for people with disabilities. Mr. Smith has a mobility impairment. Mr. Smith is a person with a disability as that term is defined by the ADA.

12.     Plaintiff Doris Stewart resides in Chicago, Illinois. Ms. Stewart works in Chicago, Illinois as an advocate for persons with disabilities. Ms. Stewart has a mobility impairment and uses a manual wheelchair for mobility. Ms. Stewart is a person with a disability as that term is defined by the ADA.

13.     Plaintiff Margaret Holzer resides in Chicago, Illinois. Ms. Holzer works in Chicago, Illinois and is an advocate for persons with disabilities. Ms. Holzer has a mobility impairment and uses a motorized wheelchair for mobility. Ms. Holzer is a person with a disability as that term is defined by the ADA.

**Defendant**

14.     Defendant City of Illinois is a municipal corporation authorized under the State of Illinois, and is a public entity as that term is defined by the ADA, 42 U.S.C. § 121310l; 28 C.F.R. § 35.104.

4

## CLASS ACTION ALLEGATIONS

15.    The plaintiffs bring this action, pursuant to Fed. R. Civ. P. 23 (b)(2), on behalf of themselves and a class of individuals consisting of persons with a wide range of disabilities, including but not limited to individuals who use ambulatory devices such as wheelchairs or scooters for mobility, and who wish to access the public programs, activities, and/or services within the City of Chicago.

16.    The plaintiffs are being denied the full and equal participation in the goods, services, programs, activities and benefits offered to the general public within the City of Chicago and the plaintiffs are being denied the full and equal participation in the goods, services, programs, activities and benefits offered by the Defendant, as a result of the failure of the City of Chicago to properly install, repair or adequately maintain curb ramps when city streets are resurfaced or sidewalks are installed, and as a result of the failure of the City of Chicago to develop and implement as part of a properly developed Transition Plan, a prioritized schedule for installing curb ramps at existing pedestrian walkways which have not been installed or altered since the effective date of the ADA, all in violation of Title II of the ADA, 42 U.S.C. §. 12131 et seq.

17.    The size of the class is so numerous that joinder of the individual members would be impracticable.  The 2000 US Census lists the number of persons in Chicago between the ages of 21 and 64 with disabilities as 400,961.  Adding those under 21 and more than 65 brings the number of persons in Chicago with disabilities to nearly 600,000. To this number need to be added those disabled persons who come into the city every day

to work, shop or play.

18.     The named plaintiffs are adequate class representatives as they are directly impacted by the Defendant's failure to comply with the ADA as alleged in this Complaint. The interests of the named plaintiffs are not in conflict with the interests of the class as a whole. The attorneys representing the class are experienced in representing clients with claims involving alleged ADA and Section 504 violations.

19.     The named plaintiffs are a small number of those affected by the grievances presented in this case -- people with mobility limitations who use the public ways of Chicago, whether residents or not.  Residents of Chicago who have mobility limitations (or may have in the future) number in the hundreds of thousands; nonresidents include visitors as well as daily commuters, many thousands of whom have or will have mobility limitations.  The number of curbs at a given intersection may range from three or four to eight to ten or more, depending on the number of intersecting streets and pedestrian islands, etc.  And alleys occurring at mid-block present two more sites that require curb cuts or ramps.

20.     The need to correct the pattern of failure presented in this  case is compounded by the number of individuals affected; the need is further complicated by the number of possible sites with improper installations.  Finally, it is a compelling need -- to avoid injury to individuals and to improve the daily quality of life for these individuals and everyone else traversing the public way in Chicago.

21.     The impact of these conditions on the daily life of a person with a mobility

6

limitation is difficult to imagine.

22.     In order to travel to and from work, a mobility-limited person must know the condition of each and every curb that s/he must safely traverse.  Those conditions change with the season. In the winter, piles of snow or ice often make the curb cut impassable. In the summer, construction work often requires the person to find another, safer path to work.

23.     In order to meet someone for lunch, not only must s/he know whether the restaurant is accessible, but also whether the path of travel from point A (the office) to point B (the restaurant) is also accessible.

24.     In order for him/her to use public buildings or other public venues, the path of travel to (as well as into and throughout) the facility must be accessible. If a person with mobility limitations is going to a new location, a safe, accessible path of travel is unknowable; there is no one, no agency with the answer -- only another person with a mobility limitation who has been recently to that location.

25.     Job-hunting becomes a real adventure into new territory, requiring a cell phone so that s/he can inform a potentially new employer when blocked by an inaccessible public way or when reaching an inaccessible site.

26.     An accessible path of travel must become an integral part of the daily planning for a person with a mobility limitation in order for him/her to reach any given destination in a safe and timely manner.  A flexible approach to daily events also becomes part of his/her mind set, even though there may be occasional breakthroughs of anger that

7

result in rude outbursts or, perhaps, lawsuits.

27.    Common questions of law and fact are involved, including questions posed by the plaintiffs' allegations that Defendant has failed to properly install, repair or adequately maintain curb ramps when the Defendant resurfaces city streets or installs sidewalks, that the Defendant has failed to properly develop and implement a Transition Plan, and that the Defendant has failed to develop and implement a prioritized plan for installing curb ramps at existing pedestrian walkways which have not been installed or altered since the effective date of the ADA. These claims of the named plaintiffs are typical of the claims of the class.

28.    Inconsistent or varying adjudication with respect to individual members of the class will result in establishing incompatible standards of conduct for the party opposing class certification generally applicable to the class, making declaratory or injunctive relief appropriate to the class as a whole.

29.    Notice under Fed. R. Civ. P. 23(b)(2) is not required. Notice of any contemplated settlement or dismissal will be provided pursuant to R. 23(e) as the Court deems appropriate.

**FACTS**

30.    The guidelines established by the ADA for ramps and curbs recognize the difficulty encountered by persons with disabilities as they walk or use walkers, wheelchairs and/or scooters in navigating curbs and ramps.  The ADA realistically

provides different solutions for different problems.

31.     A 1/4 inch vertical rise requires no treatment while 1/4 to1/2 inch vertical rise is beveled.  A vertical rise more than ½ inch requires a ramp.

32.     The overall rise of a curb cut or ramp is at least 12 inches in distance for every 1 inch of height (i.e. a 4 inch curb would use a 4 foot long ramp and a 6 inch curb would use a 6 foot long ramp [a 1:12 slope]).

33.     If space is limited the rise could be as short as 5 feet for a 6 inch curb (a 1:10 slope) or 2 feet for a 3 inch curb (a 1:8 slope).

34.     No slope can be greater than 1:8 and those shorter than 1:12 are authorized for these very short distances only if space is limited.

35.     Curb ramps require detectable warnings. A detectable warning is a standardized surface feature built in or applied to walking surfaces or other elements to warn visually impaired people of hazards. Detectable warnings are raised domes with a diameter of about 0.9 in (23 mm), a height of about 0.2 in (5 mm) and a center-to-center spacing of about 2.35 in (60 mm) which contrast visually with adjoining surfaces, either light-on-dark, or dark-on-light.

36.     On information and belief, the plaintiffs have been made aware that the City of Chicago has made architectural and engineering drawings for curb cuts and ramps which met the criteria established by the ADA but through inadvertence, poor oversight or failed supervision the completed curb cut or ramp failed to meet ADA standards and/or criteria.

9

37.    The plaintiffs are aware of locations where curb cuts and ramps are improperly installed or missing.  These corners do not provide safe access to those who use wheelchairs, walkers, and scooters. Several of these intersections are in or near the downtown commercial district, government facilities, or other public commercial facilities. Many  are in Chicago's diverse neighborhoods.  There are too many faulty curbs and inaccessible routes in Chicago to even attempt to list but some examples include:

> a.    There are no curb cuts or ramps at the center island on the south side of the intersection of Jackson and Wacker.
>
> b.    Northeast corner of Wabash and Madison.
>
> c.    Southeast corner of Washington and Wabash.
>
> d.    Northwest corner of LaSalle and W. Court Place.
>
> e.    Water, ice and snow collect and pond at Northeast corner of Randolf and N. Garland Court forcing the disabled onto Randolf.
>
> f.    Water, ice and snow collect and pond at many locations throughout Chicago in violation of the ADA.  An example is the Northwest corner of Dearborn and Madison.
>
> g.    On the North Side a wheel chair going on Belden to or from Halsted to Lincoln Park must use the street for much or the journey.
>
> h.    On the near South side a wheel chair cannot use either sidewalk to complete a journey from Clark to Wells.

10

      i.      On the West side and in neighborhoods throughout Chicago, curb ramps are overly steep like the Northwest corner of Peoria and Grand, Southwest corner Schiller & Hoyne and the Southwest corner Leavitt and Huron.

      j.      Alley on the east side of Milwaukee between Hubbard and Grand.

      k.      Southeast corner LaSalle and Madison.

      l.      Northwest corner LaSalle and Adams.

      m.      Northwest corner Clark and Madison.

      n.      Southwest corner LaSalle and Adams.

      o.      Northwest corner Jefferson and Fulton.

      p.      Southwest corner Damen and North.

      q.      Southeast corner Grand and Dearborn.

      r.      Many T intersections such as the west side of Chestnut and State or the west side of Schiller and Leavitt have no curb cut.

      s.      Northwest corner Orleans and Menomonee.

      t.      Southeast corner Armitage and Orchard where curb joins sidewalk.

      u.      Southeast and Southwest corners Wisconsin and Orleans.

      v.      Few of the curb ramps have detectable warnings.

38.     The plaintiffs are not aware of every location where curb cuts and ramps are improperly installed or missing.

39.     Title II of the ADA prohibits a public entity from excluding individuals

with disabilities from participating in, or being denied, the benefits of the goods, services, programs and activities of the entity, or otherwise being discriminated against on the basis of their disabilities. 42 U.S.C. § 12132.

40.     The regulations implementing title II of the ADA require a public entity when altering any existing street, road, sidewalk or other facility in any manner that affects usability, to make the altered portions accessible to, and usable by, individuals with disabilities. 28 C.F.R. § 35.151(b).

41.     The regulations specifically address the subject of curb ramps and provide that a public entity must install curb ramps at intersections whenever it alters streets, roads or highways after January 26, 1992. 28 C.F.R. § 35.151(e) (1). Similarly, it must install curb ramps at intersections whenever it alters sidewalks after January 26, 1992. 28 C.F.R. § 35.151(e)(2).

42.     The resurfacing of streets within the City of Chicago by the Department of Transportation and the City of Chicago, is an alteration that affects accessibility and usability of those streets, and therefore is an alteration within the meaning of the ADA. 28 C.F.R. § 35.151(b).

43.     28 C.F.R. § 35.150(d) requires a public entity to develop within six months of January 26, 1992, a Transition Plan setting forth the steps necessary to complete changes undertaken to achieve accessibility. The public entity must provide an opportunity to interested persons, including individuals with disabilities or organizations representing individuals with disabilities, to participate in the development of this

Transition Plan.

44.     28 C.F.R. § 35.150(d)(2) also requires that the Transition Plan of a public entity include "a schedule for providing curb ramps or other sloped areas where pedestrians walk across curbs, giving priority to walkways serving entities covered by the Act, including State and local government offices and facilities, transportation, places of public accommodation, and employers, followed by walkways serving other areas."

45.     The City of Chicago operates a "program or activity receiving Federal financial assistance" under the meaning of Section 504.


## COUNT I

46.     Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 45, inclusive.

47.     The Defendant's practices as set forth above, constitute unlawful and intentional discrimination on the basis of disability, in violation of Title II of the Americans With Disabilities Act 42 U.S.C. § 12131 et seq., and 28 C.F.R. § 35.151(b)(e), as follows:

    a.     The Defendant illegally failed to properly install or maintain curb cuts and ramps when resurfacing streets and altering or installing city sidewalks;

    b.     The Defendant illegally failed to install all necessary curb cuts and ramps when resurfacing streets and altering or

installing city sidewalks;

c.       The Defendant illegally failed to develop and implement a proper Transition Plan as required by the ADA and its implementing regulations, specifically 28 C.F.R. §5.150 (d); and

d.       The Defendant illegally failed to develop and implement as part of the City's Transition Plan, a prioritized schedule for installing curb cuts and ramps at existing pedestrian walkways, which have not been installed or altered since the effective date of the ADA, giving priority to walkways serving entities covered by the Act, including State and local government offices and facilities, transportation, places of public accommodation, and employers, followed by walkways serving other areas.

48.       The Defendant's conduct constitutes an ongoing and continuous violation of the ADA and, unless restrained and enjoined from doing so, the Defendant will continue to violate the ADA. The Defendant's acts and omissions, unless enjoined, will continue to inflict irreparable injuries for which plaintiffs have no adequate remedy and law.

## COUNT II

### VIOLATION OF SECTION 504 OF THE
### REHABILITATION ACT OF 1973, AS AMENDED,
### 29 U.S.C. § 794 ET SEQ., BY THE CITY OF CHICAGO

49.    Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 48, inclusive.

50.    Each individual plaintiff is an "otherwise qualified individual with a disability" under the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504").

51.    The City of Chicago operates a "program or activity receiving Federal financial assistance" under the meaning of Section 504.

52.    Through the acts and omissions alleged herein, the City of Chicago has, by reason of plaintiffs' disabilities: excluded plaintiffs from participation in the City of Chicago's programs, services and activities; denied plaintiffs the benefits of the City of Chicago's programs, services, and activities; and subjected plaintiffs to discrimination.

53.    The City of Chicago's acts and omissions set forth herein are in violation of the equal access and non-discrimination requirements set forth in Section 504, and the regulations promulgated thereunder, and have resulted in injury to plaintiffs.

54.    The City of Chicago's conduct constitutes an ongoing and continuous violation of Section 504 and, unless restrained and enjoined from doing so, the City of Chicago will continue to violate Section 504. The City of Chicago's acts and omissions, unless enjoined, will continue to inflict irreparable injuries for which plaintiffs have no

adequate remedy and law.

## PRAYER FOR RELIEF,

WHEREFORE, the Plaintiffs request that the Court:

1.      Exercise jurisdiction over this action;

2.      Certify the class herein, and order class-wide relief in the instant action;

3.      Declare that Defendant's conduct violates the Americans With Disabilities Act and Section 504 of the Rehabilitation Act of 1973;

4.      Issue a preliminary and permanent injunction requiring Defendant to install curb ramps whenever it resurfaces, alters or repairs streets, or alters, repairs or installs sidewalks, as required by the Americans With Disabilities Act and Section 504 of the Rehabilitation Act of 1973, together with oversight to assure correct installation;

5.      Issue an injunction requiring Defendant to install or repair curb ramps at each corner where it has resurfaced streets, or repaired or installed sidewalks since the date of the effective enactment of the ADA, together with oversight to assure correct installation;

6.      Issue an injunction requiring the Defendant to develop and implement a proper Transition Plan as required by the ADA and its implementing regulations, specifically 28 C.F.R. § 35.150(d);

7.      Issue an injunction requiring the Defendant to develop and implement as

part of the City's Transition Plan, a prioritized schedule for installing curb cuts and ramps at existing pedestrian walkways, which have not been installed or altered since the effective date of the ADA, giving priority to walkways serving entities covered by the Act, including State and local government offices and facilities, transportation, places of public accommodation, and employers, followed by walkways serving other areas.

8.      Award plaintiffs and class members compensatory and punitive damages; and

9.      Award attorneys fees and such other relief as the Court deems appropriate.

10.     For such other relief as this Court deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand jury trial in this action pursuant to Federal Rule of Civil Procedure 38(b).


                              Respectfully submitted,

                              s/ Theodore A. Woerthwein
                              One of the Attorney for Plaintiffs

Theodore A. Woerthwein
John L. Miller
Woerthwein & Miller
200 West Madison Street
  Suite 710
Chicago, IL  60606
(312) 654-0001
Bar Registration 03055264

**CERTIFICATION OF SERVICE**

To:    Caroline K. Sheerin, Esq
        Lisa E. Fike, Esq.
        City of Chicago, Corporation Counsel
        30 N.  LaSalle, Suite 900
        Chicago, Illinois 60602

      This is to certify that on the 19th day of October,  2005, the undersigned attorney caused a copy of the preceding **AMENDED COMPLAINT**,  to be delivered to the individuals listed above by electronic notification.

           S/ Theodore A. Woerthwein
          Theodore A. Woerthwein

Woerthwein & Miller
200 West Madison Street
  Suite 710
Chicago, IL  60606
(312) 654-0001
Bar Registration 03055264